IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | )   Criminal Action No. 1:15-cr-173(2) (RDA) |
| | ) |
| ULRISTE TULIN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Ulriste Tulin's ("Defendant") *pro se* Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 821 to the U.S. Sentencing Guidelines ("Motion"). Dkt. 228.[1] Having considered Defendant's Motion together with the Government's Response (Dkt. 230), the Court DENIES the Motion for the reasons that follow.

I. BACKGROUND[2]

A. Factual Background

In Haiti, Defendant and his codefendants, Samson Jolibois and Monclaire Saint Louis, kidnapped and held for ransom two U.S. citizens, Yvroseline Ferile and Ariante Mercelin. Dkt. 212 ¶¶ 17, 18. Defendant and his codefendants were members of a kidnapping gang that targeted

---

[1] Although Defendant's Motion suggests that he has two bases for relief, Defendant relies on Section 3582 only to the extent that it provides a basis to account for the amendments to the Sentencing Guidelines and does not rely on Section 3582 as a separate basis for relief.

[2] The facts here are appropriately drawn from the Trial Transcript ("Transcript") and the Presentence Investigation Report (the "PSR") adopted by former U.S. District Judge Liam O'Grady at sentencing. Dkts. 89-91, 212, 216.

1

citizens of the United States and European countries for the purposes of receiving ransom payments. *Id.* ¶ 13.

On June 2, 2012, Yvroseline Fergile, a U.S. citizen of Haitian descent, was kidnapped when she was held at gun point, "grabbed by her hair . . . [and] forced into a minibus." *Id.* ¶ 26. "She was hit from time to time in order to stop her from screaming, as they drove to the location where [she] was going to be held." *Id.* The kidnappers repeatedly threatened Fergile that they would rape, shoot, and kill her. *Id.* ¶¶ 26, 27; Dkt. 90 at 96:10-16 (noting that one of the kidnappers threatened to "cut [her] finger, cut [her] face, cut [her] body [into] pieces and start sending [them] to [her family] if they [didn't] get [the] money."). Specifically, Fergile identified Defendant as "the person who initially grabbed her . . . [and] guarded her while she was in captivity." Dkt. 212 ¶ 29. Further, codefendant Jolibois testified that not only did everyone, including Defendant, know that guns would be involved in the kidnapping because "it is an act that you commit using guns," but that Defendant "was holding [a] .45" throughout the kidnapping. Dkt. 90 at 129:22-130:1. Upon arriving to the secondary location, "[Fergile] was bleeding from her arm and nose, and a blood vessel had burst in her eye." Dkt. 212 ¶ 26. The kidnappers negotiated with her family and demanded $150,000 for her release. *Id.* ¶ 17. On June 8, 2012, Fergile escaped from the kidnappers' custody. *Id.*

On July 9, 2012, Defendant participated in the kidnapping of Ariante Mercelin, another U.S. citizen of Haitian descent, who was grabbed outside of her home by a "man holding a gun." *Id.* ¶ 23. The man told Mercelin "if you scream, I'm going to blow your head up." *Id.* The man proceeded to "drag her to a smaller house on the property . . . placed a gun to her face and demanded the money in her home." *Id.* While Mercelin was in captivity, the kidnappers negotiated with her family and demanded $250,000 for her release. *Id.* ¶ 18. At trial, Jolibois

testified that Mercelin was taken to Jolibois' house because Defendant threatened him with a gun, and therefore, he "had no choice but to let [Defendant] use [his] house." Dkt. 90 at 138:11-16. Mercelin feared the kidnappers were going to kill her because they "did not cover their faces and shared details about their lives." *Id.* ¶ 24. On July 12, 2012, law enforcement officers in Haiti rescued Mercelin and apprehended Jolibois and Saint Louis. *Id.*

On August 13, 2015, Defendant was arrested in Haiti. *Id.* ¶ 2 n.2.

### B. Procedural Background

On February 4, 2016, a federal grand jury in this District returned a four-count Superseding Indictment charging Defendant and codefendant Saint Louis with one count of conspiracy to commit hostage taking (Count 1), two counts of hostage taking (Counts 2 & 3), and one count of using a firearm during a crime of violence (Count 4). Dkt. 6. On December 16, 2016, a jury returned a verdict and found Defendant and his codefendant Saint Louis guilty on all counts. Dkt. 87. On March 31, 2017, retired U.S. District Judge Liam O'Grady sentenced Defendant to 156 months on Counts 1, 2, and 3 to run concurrently to one another, and 84 months as to Count 4, to run consecutively to those counts, for a total term of imprisonment of 240 months. Dkts. 118, 125.

Afterwards, Defendant filed numerous post-conviction motions for relief, and all of which were denied, Dkts. 97, 107, 127, 151, 153, 162, 175, 195, except for Defendant's Motion for Leave to Join Petition Seeking *Davis* Relief, Dkt. 201.[3] On June 26, 2020, Judge O'Grady granted Defendant's motion seeking *Davis* relief, vacated Defendant's conviction on Count 4, and ordered Defendant to be resentenced. Dkt. 204. On November 17, 2020, Judge O'Grady re-sentenced

---

[3] In *United States v. Davis*, the Court held the residual clause of 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague. 588 U.S. 445 (2019). Here, Defendant's conviction on Count 4 was vacated because hostage taking only qualified as a predicate crime of violence under the residual clause, and not the elements of a charge under 18 U.S.C. § 924(c)(3). Dkt. 204.

Defendant to 204 months to run concurrently on Counts 1, 2, and 3, with a five-year term of Supervised Release. Dkt. 217. On May 24, 2024, the case was reassigned to this District Judge.

On July 22, 2024, Defendant filed the instant *pro se* Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 821 to the U.S. Sentencing Guidelines. Dkt. 228. On August 6, 2024, the Government filed their Response in Opposition to the Motion. Dkt. 230.

## II. LEGAL STANDARD

The legal standard for evaluating a motion for sentence reduction pursuant to Amendment 821 to the Sentencing Guidelines is set by 18 U.S.C. § 3582(c). In relevant part, Amendment 821: (1) reduces "status points" for certain offenders with less serious criminal histories and (2) provides for a decrease of two offense levels for individuals with no criminal history points and whose offense did not involve specific aggravating factors. U.S. Sentencing Comm'n., *Amendment to the Sentencing Guidelines* (August 31, 2023). On August 24, 2023, the Commission voted to give retroactive effect to these provisions of Amendment 821. *Id.*, *see also* U.S. Sentencing Comm'n, *U.S. Sentencing Commission Votes to Allow Retroactive Sentence Reductions and Announces its Next Set of Policy Prioriti*es (Aug. 24, 2023), available at https://www.ussc.gov/about/news/press-releases/august-24-2023 (last accessed July 10, 2025). "When the Commission makes a Guidelines amendment retroactive, 18 U.S.C. § 3582(c) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision." *Dillion v. United States*, 560 U.S. 817, 821 (2010).

In deciding if a sentence reduction is appropriate, "[a] court must first determine that a reduction is consistent with [U.S.S.G.] § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in [18 U.S.C.] § 3553(a)." *Id.* at 826. U.S.S.G. § 1B1.10(b)(1) requires the court to "determine [if] the amended

4

guideline range [] would have been applicable to the defendant" at the time of the initial sentencing.

If a court determines that a sentence reduction is available, the court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. *See* 18 U.S.C. § 382(c)(1)(A); *Dillion*, 560 U.S. at 827.

### III. ANALYSIS

Defendant moves for a sentence reduction pursuant to Part B of Amendment 821 of the Sentencing Guidelines;[4] however, Defendant is not eligible for a sentence reduction under Part B. Accordingly, the Court will deny Defendant's Motion.

Part B of Amendment 821 of the Sentencing Guidelines, now appearing in Section 4C1.1 of the Sentencing Guidelines, provides that a defendant cannot receive an adjustment if his offense involves any of the specific aggravating factors outlined in Section 4C1.1(a)(2)-(10).[5]  U.S.S.G.

---

[4] Although Defendant also moved for a sentence reduction pursuant to Part A of Amendment 821, Defendant is a zero-point offender and did not receive any status points. Thus, Defendant is facially ineligible for a sentence reduction pursuant to Part A, and this Court will focus its analysis on Part B of Amendment 821.

[5] Under Section 4C1.1, a Defendant is not eligible for a reduction if:

(1) the defendant did . . . receive an adjustment under §3A1.4 (Terrorism); (2) the defendant . . . used violence or credible threats of violence in connection with the offense; (3) the offense did . . . result in death or serious bodily injury; (4) the instant offense of conviction . . . is a sex offense; (5) the defendant . . . personally caused substantial financial hardship; (6) the defendant . . . possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense; (7) the instant offense of conviction is . . . covered by § 2H1.1 (Offenses Involving Individual Rights); (8) the defendant did . . . receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.1 (Serious Human Rights Offense); (9) the defendant did . . . receive an adjustment under § 3B1.1 (Aggravating Role); or (10) the defendant was . . . engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

§ 4C1.1. The two relevant factors here are: "(2) the defendant . . . use[d] violence or credible threats of violence in connection with the offense" and "(6) the defendant . . . possesse[d] . . . a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense." *Id.*

Taking the latter first, Defendant is ineligible for a reduction because he "possessed . . . a firearm . . . in connection with the offense." 4C1.1(a)(6). At trial, codefendant Jolibois testified that Defendant "was holding [a] .45" throughout the kidnapping of Fergile. Dkt. 90 at 129:22-23. Moreover, Jolibois further testified that everyone, including Defendant, knew guns would be involved in the kidnapping because it is "an act that you commit using guns." *Id.* at 129:25-130:1. Based on the evidence and testimony presented at trial, the jury necessarily found that Defendant did possess a gun in connection with the offenses when they found Defendant guilty on Count 4.[6] Dkt. 87; *United States v. Davis*, 588 U.S. 445 (2019) (holding the residual clause of 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague). Thus, Defendant is ineligible for a reduction because he "possessed . . . a firearm . . . in connection with the offense." U.S.S.G. § 4C1.1(a)(6).

Defendant is also ineligible for a sentence reduction because he "used violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(2). In the absence of any definition of "violence" provided by the Sentencing Guidelines, courts have looked to the plain meaning of the term. *United States v. Yang*, 2024 WL 519962, at * 3-4 (D.D.C. Feb. 9, 2024); *United States. v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997). "Contemporary dictionaries define

---

U.S.S.G. § 4C1.1(a)(1)-(10).

[6] Although Defendant's conviction on Count 4 has been vacated on legal grounds under *Davis*, there was no argument or finding that would call into question the jury's finding that Defendant possessed a firearm in connection with the offenses. Dkt. 204. Rather, following *Davis*, hostage taking is not a crime of violence, and therefore, it does not qualify as a predicate offense to support a conviction on Count 4. *Id.*

6

'violence' as '[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm, . . . or as 'the use of physical force so as to injure, abuse, damage, or destroy.'" *Id.* (first quoting *Violence, Black's Law Dictionary* (11th ed. 2019); and then quoting *Violence, Merriam Webster*, https://www.merriam-webster.com/dictionary/violence).

In this case, the actions of Defendant in connection with the offense are more than sufficient to qualify as violence. Defendant was "a member of a kidnapping crew and actively participated in the kidnappings." Dkt. 212 ¶ 38. Broadly, these kidnappings involved members of the crew kidnapping their victims at gunpoint, transporting them to a secondary location, and holding them for ransom. *Id.* ¶¶ 17-28. Defendant himself, at a minimum, grabbed Fergile by her hair while armed with a gun, forced her into the minibus, and "guarded her while she was in captivity." *Id.* ¶ 29. Moreover, in the course of kidnapping Mercelin, Defendant demanded Mercelin be taken to Jolibois' house and threatened him with a gun. Dkt. 90 at 138:11-16. Thus, Defendant "used violence or credible threats of violence in connection with the offense" and is ineligible for a reduction under U.S.S.G. § 4C1.1(a)(2). *See United States v. Sanchez*, 2025 WL 51473, at *1-2 (E.D. Va. Jan. 8, 2025) (holding a defendant who kidnapped a woman at gunpoint was ineligible for a sentence reduction under Part B of Amendment 821 because he used violence and credible threats of violence); *United States v. Lewis*, 2024 WL 1184712, at *1-2 (W.D.N.C. Mar. 19, 2024) (holding a defendant who robbed a Jack in the Box at gunpoint and threatened to shoot the manager was also ineligible for a sentence reduction under Part B of Amendment 821 because he used violence and credible threats of violence); *see also United States v. Castleman*, 572 U.S. 157, 182 (2014) (Scalia J., concurring in part and in the judgment) (explaining that "hitting, slapping, shoving, grabbing, pinching, biting, [and] *hair pulling*" are examples of physical force "capable

7

of causing physical pain or injury" (emphasis added)); *Turner ex rel. Turner v. United States*, 545 F.3d 1194, 1997 (11th Cir. 2008) (describing Plaintiff's actions as "violent" when he grabbed his mother by the hair).

Therefore, notwithstanding that Defendant is a zero-point offender, he cannot qualify for a sentence reduction under Part B of Amendment 821 because he does not meet "all of the . . . criteria" because he "possessed . . . a firearm . . . in connection with the offense" and "used violence or credible threats of violence in connection with the offense." U.S.S.G. §§ 4C1.1(a)(2), (6). As a result, the Court finds Defendant ineligible for a sentence reduction, and therefore declines to consider the Section 3553(a) factors and relevant post-conviction conduct.

Accordingly, it is hereby ORDERED that Defendant's Motion (Dkt. 228) is **DENIED**.

If Defendant wishes to appeal this decision, he must file a written Notice of Appeal with the Clerk of this court within fourteen (14) days of receipt of this Order. Failure to file a timely Notice of Appeal waives the right to appeal.

The Clerk is directed to forward copies of this Order to Defendant, counsel of record, the U.S. Marshals Service, the Federal Bureau of Prisons, and the U.S. Probation Office.

It is SO ORDERED.

/s/
Rossie D. Alston, Jr.
United States District Judge

Alexandria, Virginia
July 30, 2025